WILLIAM FORMAN, ET. AL., APPELLANTS AND CROSS–RESPONDENTS, v. EAGLE THRIFTY DRUGS AND MARKETS, INC., RESPONDENT AND CROSS–APPELLANT.

No. 7045

November 27, 1973                516 P.2d 1234

[Rehearing denied January 15, 1974]

*Stewart, Horton & McKissick, Ltd.,* of Reno, for Appellants and Cross-Respondents.

*Robinson & Cassas,* of Reno, for Respondent and Cross-Appellant.

## OPINION

By the Court, ZENOFF, J.:

This case is before us after protracted litigation in the lower court. The relevant facts are largely of a procedural nature.

Respondent Eagle Thrifty Drugs and Markets, Inc., owns a three and one-half acre parcel situated at the intersection of

Mayberry Drive and Hunter Lake Drive in Reno, Nevada. In 1967 Eagle Thrifty sought a change in land use for the entire parcel to C–1b, which is neighborhood shopping center commercial. The land use change was denied by the city planning commission but later granted by the Reno City Council following appeal to that body. The action by the city council was by way of Ordinance Number 1880. Thereafter a class action was filed against Eagle Thrifty and the City of Reno alleging various causes of action which germinated from the adoption of this ordinance.

On August 28, 1970 the trial court granted the appellants' motion for summary judgment as to its first cause of action seeking to restrain construction of a supermarket on the rezoned parcel. The trial court found that the city council acted improperly by enacting the ordinance in question. Said summary judgment was entered on October 13, 1970 pursuant to NRCP 54(b). No appeal was taken.

Before judgment was entered the residents of the City of Reno approved Ordinance Number 1880 in a "referendum" election and adopted by way of "initiative" an amendment to the Reno zoning law providing that no industrial or commercial use be allowed within 300 feet of property used for elementary or junior high school purposes. The Eagle Thrifty property rezoned by Ordinance Number 1880 lies within 300 feet of a grammar school.

Following the election, on motion of the respondent, the trial court reopened the case to receive additional testimony and "vacated" and set aside the October 13 summary judgment in favor of the appellants. After hearing additional testimony the trial court granted the respondent's motion for summary judgment on appellants' first cause of action, all other causes of action having been dismissed. Partial summary judgment was entered on July 29, 1971 and appellants were given leave to file an amended complaint attacking the referendum ordinance. Appellants filed a supplemental complaint and the matter proceeded to trial. Final judgment was entered in favor of the respondent on July 12, 1972.

1. Before we address the merits of the appellants' contentions we must dispose of an alleged procedural defect in the notice of appeal.

Appellants have appealed from a final judgment of the trial court entered July 12, 1972. In support of their appeal, however, appellants attack only the judgment of the district court

entered on July 29, 1971 granting partial summary judgment to the respondent. There was no appealable determination of this order pursuant to Rule 54(b).

Former Nevada Rule of Civil Procedure, Rule 73(b) (now Rule 3(c) of the Nevada Rules of Appellate Procedure), required that "the notice of appeal shall . . . designate the judgment or part thereof appealed from. . . ." The notice filed by the appellants fails to specify that appeal is taken from the July 29 judgment. However, for purposes of taking an appeal pursuant to NRCP 72(a) (now NRAP 3A(b)(1)), this judgment did not become a final judgment until July 12, 1972.

The filing of a simple notice of appeal was intended to take the place of more complicated procedures to obtain review and the notice should not be used as a technical trap for the unwary draftsman. Jones v. Chaney & James Construction Co., 399 F.2d 84 (5th Cir. 1968). A defective notice of appeal should not warrant dismissal for want of jurisdiction where the intention to appeal from a specific judgment may be reasonably inferred from the text of the notice and where the defect has not materially misled the appellee. Firchau v. Diamond Nat. Corp., 345 F.2d 269 (9th Cir. 1965); Donovan v. Esso Shipping Co., 259 F.2d 65 (3rd Cir. 1958) cert. denied 359 U.S. 907 (1958).

On August 3, 1972, within the thirty days allowed for filing notice of appeal, appellants filed with the court and served on the respondent a Statement of Points on Appeal which clearly revealed their intention to appeal from the July 29 judgment. There has been no showing that the respondent was materially misled by the notice.

In light of the foregoing discussion and the importance of the issues raised we decline to dismiss the appeal on this procedural technicality.

For reasons which will become apparent we need not discuss the propriety or the contentions of the cross-appeal.

2. Appellants contend that the lower court order entered July 6, 1971 granting summary judgment to the respondent was error for the following reasons: (a) that the City Ordinance Number 1880 referred to the voters by referendum was void and that its approval was a nullity, and (b) that in any event the initiative petition as adopted is inconsistent with the referendum measure and that the initiative petition must prevail since it passed by the larger number of votes. We hold that neither the referred measure nor the initiative proposal were proper subjects to be presented to the voters pursuant to the

initiative and referendum provisions of the Nevada Constitution.

Initiative is that power reserved to the people to propose new laws; referendum, on the other hand, gives them the power to veto those laws passed by their representatives. The initiative and referendum powers granted to the citizens of this state are extremely broad,[1] and are further reserved to the registered voters of each county and each municipality as to all local, special and municipal legislation of every kind. Nev. Const. Art. 19, Sec. 4.

3. It is apparent, however, that this plebiscite applies only to "legislation" and that administrative acts are excepted from initiative and referendum.

In the City of Reno zoning changes are effected by city ordinance enacted by the Reno City Council. A municipal ordinance may be either legislative or administrative. Kleiber v. City of San Francisco, 117 P.2d 657 (Cal. 1941). The decision in Denman v. Quin, 116 S.W.2d 783, 786 (Tex.Civ.App. 1938), offers an oft-used test for drawing the distinction: "An ordinance originating or enacting a permanent law or laying down a rule of conduct or course of policy for the guidance of the citizens or their officers and agents is purely legislative in character and referable, but an ordinance which simply puts into execution previously-declared policies, or previously-enacted laws, is administrative or executive in character, and not referable." This legislative-administrative dichotomy is often vague, but it is this very vagueness which has given the courts considerable leeway in balancing two competing interests: that of protecting government from unwarranted harassment and the equal interest in protecting benefits to be won through direct legislation. See generally Comment, Stan.L.Rev. 497 (1951).

We think that whether or not the citizens of a state wish to embark upon a policy of zoning for the purpose of regulating and restricting the construction and use of buildings within fixed areas is a legislative matter subject to referendum. But when, as in the present case, such policy has been determined and the changing of such areas, or the granting of exceptions

[1]Nev. Const. Art. 19, Sec. 2:
. . . the people reserve to themselves the power to propose, by initiative petition, statutes and amendments to statutes and amendments to this constitution, and to enact or reject them at the polls.

has been committed to the planning commission and the city council in order to secure the uniformity necessary to the accomplishment of the purposes of the comprehensive zoning ordinance, such action is administrative and not referable. Cf. Kelley v. John, 75 N.W.2d 713, 716 (Neb. 1956).

4. For similar and additional reasons the residents of the City of Reno are barred from adopting an amendment to the zoning law by initiative ballot.

When in a matter of state-wide concern the state legislature has specifically delegated particular authority to a governing board, the courts have uniformly held that initiative processes do not ordinarily apply. 5 McQuillan, Municipal Corporations, Sec. 16.52.

The State of Nevada has delegated comprehensive powers to cities and towns in the area of zoning regulation. The legislative body of a city or of a county of at least 15,000 people must, under Chapter 278, create a planning commission which in turn must adopt a long-term plan of physical development. NRS 278.030, 278.150. Elements of the plan include community design, conservation, economics, housing, land use, public buildings, public services and facilities, recreation, streets and highways, transit and transportation. NRS 278.160. The commission may adopt the plan in whole or in part after prescribed notice and public hearing and by a two-thirds vote. NRS 278.170, 278.210. The legislative body may adopt all or any part of this plan after giving prescribed notice and holding a public hearing; any change or addition must be referred to the commission. NRS 278.220.

Pursuant to this legislative directive the City of Reno adopted a comprehensive land use program embodied in Title 16 of the Reno Municipal Code.

The enactment and enforcement of zoning laws and ordinances are valid exercises of the police power which is inherent in the state and which can be delegated to municipal corporations. The power to zone must be found in the police power insofar as in its exercise it imposes use restrictions on property without payment of compensation. 8 McQuillan, Municipal Corporations, Sec. 25.34.

The law requires that zoning ordinances observe state and federal constitutional provisions and requirements including that of due process. State v. Hill, 59 Nev. 231, 90 P.2d 217 (1939). The governing body of a city has the power to change

land use classifications, but no such regulation may become effective until after notice and public hearing at which interested parties and citizens shall have an opportunity to be heard. NRS 278.260. The appellants concede that the statutory notice and hearing requirements were not met. When a statute requires notice and hearing as to the possible effect of a zoning law upon property rights the action becomes quasi judicial in character, and the statutory notice and hearing then becomes necessary in order to satisfy the requirements of due process and may not be dispensed with. Hurst v. City of Burlingame, 277 P. 308 (Cal. 1929).

Moreover, a zoning ordinance must be pursuant to, and in substantial conformity with, the zoning or enabling act authorizing it. 8 McQuillan, Municipal Corporations, Sec. 25.58. The legislature has delegated the power to zone to the legislative bodies of cities and towns, so that the need for a comprehensive plan might be met, and has provided means for the protection of private property through notice and public hearing. Thus when appellants seek to initiate rezoning within the city without complying with the zoning statute, they are, in effect, attacking collaterally the very statute under which they claim the power to zone. Dewey v. Doxey-Layton Realty Co., 277 P.2d 805, 809 (Utah 1954). The state legislature, pursuant to its inherent authority, has enacted extensive enabling legislation in the matter of zoning regulation. Unless that general law is affected by repeal or amendment by the legislature, or by referendum or initiative by the people of the state, the statute guides the zoning processes of the cities and directs the means by which it is to be accomplished. Dewey v. Doxey-Layton Co., supra, at page 809.

5.   In their supplemental complaint appellants reallege that Ordinance 1880 was improperly passed by the Reno City Council. The trial court found that the land use change is not inconsistent with the objectives of the comprehensive planning involving the City of Reno, that such change would not materially affect the residential character of the land use district and that it is not an arbitrary or unreasonable exercise of the police power. These findings are not challenged.

Judgment in favor of the respondent is affirmed.

Mowbray, Gunderson, and Batjer, JJ., and Compton, D. J., concur.